OTTENSTEIN, APPELLANT, v. WESTERN RESERVE ACADEMY ET AL., APPELLEES.

(No. 8281—Decided March 23, 1977.)

*Mr. Bruce H. Wilson,* for appellant.

*Ms. Linda B. Kersker* and *Mr. Joseph M. Holden,* for appellees.

*Per Curiam.* This is an appeal from the Court of Common Pleas. Plaintiff, Victor Ottenstein, sued defend-

ants for the return of $5,000 earnest money he had paid to defendant Western Reserve Academy, through its Secretary, R. C. Brouse, who was also a partner of defendant Brouse & McDowell Co., L. P. A.

The $5,000 was paid on September 25, 1974, upon plaintiff's acceptance of Academy's offer to sell ten lots in Hudson, Ohio, for $185,340, less an allowance for assessments. The allowance was to be credited against the total sale price. The contract for sale called for the deposit of a warranty deed by Academy and the balance of the sale price by Ottenstein, with an escrow agent.

On the date that Ottenstein accepted Academy's offer, Secretary Brouse modified the typewritten offer by penning in an extension of an additional ten days for closing if Ottenstein should not be able to secure sewer permits.

The record shows that Ottenstein never deposited the balance of the purchase price; that Academy, at all times, was prepared to go through with the closing; that Secretary Brouse was vested by Academy's board with discretion to secure Ottenstein's performance after the running of the extended time for closing; and, that on May 2, 1975, Academy sold the property in question to another buyer at the same price for which plaintiff had contracted.

Defendants counterclaimed for damages allegedly arising out of Ottenstein's breach. The trial judge found in favor of defendants on the complaint and in favor of the plaintiff on the counterclaim. We affirm. The disposition of the counterclaim was not appealed.

Plaintiff alleges as his first assignment of error:

"The trial court erred in construing the contract as one without a condition precedent to the Purchasers [sic] obligation to pay any part of the purchase price."

This assignment is without merit. A careful examination of the contract convinces us that the trial judge's finding, that the agreement constituted a valid and enforceable contract of purchase on the date that it was accepted by Ottenstein, was well within the evidence adduced. The first assignment is, accordingly, overruled. See,

3 Ohio Jurisprudence 2d 817, Appellate Review, Section 820.

Plaintiff's second assignment is:

"The trial court erred in applying a rule of forfeiture where the contract is silent on that subject and all the circumstances of its making indicate that no forfeiture was intended by the parties."

The majority rule in this country is contrary to plaintiff's assertion herein. See, annotation, *Vendee's Recovery of Purchase Money,* 31 A. L. R. 2d 8, *et seq.* See also, 5 Williston On Contracts 769, Section 791 (3d ed. 1961). Earnest money (as the $5,000 was characterized in the contract, the complaint, and plaintiff's brief, or "hand money," in plaintiff's testimony) is generally subject to forfeit where it is a comparatively small advance payment (here, about 3½ percent of the total). Restatement of Contracts, Section 357(2) (1932).

The Ohio cases we have examined appear to follow the majority rule. See, *e. g., Reed* v. *McGrew* (1832), 5 Ohio 375; *Scott's Executor* v. *Executor and Heirs of Barber* (1846), 14 Ohio 547; *Gallagher* v. *Dettelbach* (1903), 1 C. C. (N. S.) 598; *Wessendorf* v. *Carter* (1934), 16 Ohio Law Abs. 313.

In *Schottenstein* v. *DeVoe* (1948), 83 Ohio App. 193, the court permitted a seller to recover the purchaser's earnest money. There, the purchaser gave the seller a check for $1,000 on July 31, 1946. On August 8, 1946, the buyer stopped payment. Defendant buyer admitted he did not have sufficient funds to cover the check and that when he stopped payment he intended to "drop the deal." Without apparently even considering actual damages sustained by the seller (indeed, it appears that no damages for the purchaser's breach were alleged, the suit being on the check) the court stated:

"The contract having been broken and the obligations of the purchaser repudiated, the seller has a right to retain the deposit on the purchase price." (Page 198.)

Several years later, the same court permitted a seller in a real estate transaction to recover on a defaulting

purchaser's cognovit note given as a down payment in consideration of the seller's agreement to convey. *Kirk* v. *Schumeth* (1952), 92 Ohio App. 442.

We find that Ohio adheres to the so-called "majority rule" and that any change with respect thereto must come from the Supreme Court.

Within the parameters of the cases cited hereinabove, we hold that *Schottenstein* v. *DeVoe, supra,* is a correct statement of Ohio law. Therefore, we overrule plaintiff's second assignment of error. Plaintiff's unexcused breach of the contract, when coupled with defendant's faultless behavior, under these circumstances where the amount involved cannot, as a matter of law, be deemed unconscionable or an unjust enrichment, or a penalty, rendered his earnest money subject to forfeit. See, *e. g., Woloveck* v. *Schueler* (1922), 19 Ohio App. 2d 210; *Norpac Realty Co.* v. *Schackne* (1923), 107 Ohio St. 425.

Having found both assignments to be without merit, we affirm the judgment.

*Judgment affirmed.*

VICTOR and HARVEY, JJ., concur.
MAHONEY, P. J., dissents.

HARVEY, J., retired, of the Court of Common Pleas of Summit County, assigned to active duty under authority of Section 6(C), Article IV, Constitution, in the Ninth Appellate District.

MAHONEY, P. J., dissenting. I am unable to reconcile myself to accept the "earnest money" or "hand money" concept as a proper statement of the law. In the absence of a provision for forfeiture or penalty, I do not think courts should imply a forfeiture by use of the phrase "earnest money" or from a small earnest money deposit equal to about 3½ percent of the $185,340 less a $45,000 credit for assessments.

In my opinion, the parties had a valid enforceable

contract without a penalty or forfeiture clause, which the purchaser breached. The seller could sue the purchaser to recover his damages for that breach. The purchaser could only sue in equity to recover that amount of the down payment which exceeded the seller's damages and constituted an unjust enrichment. Such an action by the purchaser would certainly be speculative where the seller has not sold the property to someone else. On the other hand, the seller had a right to keep possession of the purchase price. When sued by the purchaser, he merely had to show he had or would have damages or expenses in excess of the down payment. Such an action could only be maintained where a reasonable time had expired within which the seller had an opportunity to sell.

However, once the property has been sold, the seller's damages are readily ascertainable. If he does not get the same price or more, he may sue for the difference in the purchase price plus consequential damages. If he gets the same price or more, he may retain only that portion of the down payment which is equal to his direct consequential damages.

That is the fact situation in the case before us. I feel the matter should be remanded for a hearing to determine the seller's damages. I do not believe that those damages should include any "loss" of "interest" on the money as such "loss" is not consequential. I recognize that the trial court found against the seller on his counterclaim for damages. Since the trial court ordered a forfeiture of the down payment, it found there was a lack of proof on the counterclaim. This made the opinion consistent.

*Schottenstein, supra*, relied upon by appellees, is distinguishable on its facts. In that case, the seller sued the purchaser on the deposit check because he had stopped payment on it. As between the two parties, the seller was entitled to retain the deposit until he has had an opportunity to sell.

I would remand this case for a new trial on damges only.